IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR721 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | |
| JOSEPH WILLIAMS, | ) | |
| | ) | UNITED STATES' RESPONSE TO |
| Defendant. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Assistant United States Attorney, Danielle K. Angeli, and respectfully submits this sentencing memorandum for Defendant Joseph Williams ("Defendant") in response to Defendant's sentencing memorandum. (R. 32: Sentencing Mem., PageID 229-33). For the reasons set forth in the attached memorandum, the United States respectfully requests that the Court vary upward and sentence Defendant to 60 months.

                                                                                Respectfully submitted,

                                                                                JUSTIN E. HERDMAN
                                                                                United States Attorney

                             By:    /s/ Danielle K. Angeli
                                                       Danielle K. Angeli (MI: P81362)
                                                       Assistant United States Attorney
                                                       United States Court House
                                                       801 West Superior Avenue, Suite 400
                                                       Cleveland, OH 44113
                                                       (216) 622-3875
                                                        (216) 522-8354 (facsimile)
                                                       Danielle.Angeli@usdoj.gov

I. **Factual and Procedural Background**

    A. **Defendant Physically Assaults Two Intimate Partners.**

Defendant has a history of domestic violence dating back to 2011. On November 7, 2011, the Cleveland Heights Police Department ("CHPD") responded to a 911 call. The victim reported that her child's father, Defendant, pushed her and hit her during an argument. She reported that Defendant grabbed the victim's neck, pushed her onto the bed while she was holding their eight-month-old son, and threatened to kill her. Defendant then broke the victim's phone when she tried to call 911, pushed her off of the bed, and smacked her with an open hand across the left side of her face, creating a cut above her left eye. Defendant also took their child and refused to give him back. After the physical altercation, the victim went next door to a relative's home, and called 911. Defendant ultimately gave the child to a family member, and left before police arrived. Officers noticed that the victim had a 1-inch cut above her left eye when they arrived. *See* (Ex. 1: CHPD Report, 2; R. 30: Presentence Investigation Report "PSR", ¶ 7, PageID 206). On November 8, 2011, Defendant was charged with assault, domestic violence, and child endangering, in Case Number CRB1102036A, in Cleveland Heights Municipal Court. On December 11, 2011, Defendant pled no contest to assault, in violation of Ohio Revised Code § 2903.13A. (R. 30: PSR ¶ 34, PageID 210; Ex. 2: Cleveland Heights Municipal Court Journal Entry).

Defendant's domestic violence continued in the fall of 2018 against another woman and former cohabitant.[1] This victim sought a protection order against Defendant on September 25,

---

[1] Defendant was also charged with Felonious Assault, Domestic Violence Prior Conviction, and Criminal Damaging, in Cuyahoga County Court of Common Pleas, in Case Number CR-17613704. The case, however, was dismissed without prejudice on May 2, 2017. (R. 30: PSR ¶ 47, PageID 213).

2

2018. In her request, she explained that, on August 25, 2018, Defendant choked her and slammed her to the ground in the home that they shared together. He also threatened to kill himself, and took the victim's phone, changing her passcode and social media account passwords so she could not use it. When the victim tried to run next door to her grandparent's home to use their phone, Defendant pushed and pulled her up and down the stairs. He also took her keys, and laid his body on top of hers so hard that she could not breathe. He then choked her, raising her to her feet. After the physical assault, Defendant slept on the couch next to the victim to make sure she did not leave the house. On August 26, 2018, Defendant threatened to share explicit photos and videos of the victim. The next day, Defendant pushed the victim into a refrigerator. The victim then went to Florida with the intention of moving away from Defendant but decided that she would not run from him. Instead, she returned to Ohio and filed a police report. Shortly thereafter, Defendant continued to show up at her house, repeatedly called her family, and posted photos of the two of them on social media as if they were still together. Because of Defendant's behavior, she stayed at a relative's house for a week. When she returned to her home, she found one of her dining room windows was partially opened and her mailbox door was broken. In her request for a protection order, she explained that Defendant pushed her down and slapped her as early as January 2018, before she knew she was pregnant. (*Id.* ¶ 13, PageID 207-08).

The victim obtained a protection order on September 25, 2018, which expires on October 3, 2021. (Ex. 3: Protection Order). After a full hearing involving the victim and Defendant, the court found that the two were intimate partners and ordered Defendant not to abuse, harm, attempt to harm, threaten, follow, stalk, harass, force sexual relations upon, or commit sexually oriented offenses against the victim. The court further ordered Defendant to surrender his keys, stay at least 500 feet from the victim, and refrain from contacting the victim and her immediate

family, by phone or electronic means, including by posting photos or videos of the victim or referring to her on social media.  The protection order also explicitly prohibited Defendant from possessing, using, carrying, or obtaining a deadly weapon while the order is in effect, and required Defendant to turn over all deadly weapons and concealed carry licenses.  (*Id.*).

> **B.    Defendant, A Prohibited Person, Attempts To Purchase A Firearm Three Times.**

On August 31, 2018—days after Defendant's physical abuse underlying the protection order—Defendant attempted to purchase a Taurus 9mm pistol at Fin, Feather, Fur Outfitters, a Federal Firearms Licensee ("FFL"), in Middleburg Heights, Ohio.  During the purchase, Defendant completed ATF Form 4473 Firearms Transaction Record and provided false information when he said that he had never been convicted of a misdemeanor crime of domestic violence. The form defines a "misdemeanor crime of domestic violence" as "[a] federal, state, local, or tribal offense that is a misdemeanor . . . and has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed . . . by a person with whom the victim shares a child in common[.]"  The form further explains "[t]he term includes all misdemeanors that have as an element the use or attempted use of physical force or the threatened use of a deadly weapon (*e.g., assault and battery*)[.]"  (Ex. 4: ATF Form 4473 signed 8/31/18) (emphasis in original).   Defendant did not purchase the firearm, however, because he failed the National Instant Criminal Background Check System ("NICS") due to his assault conviction.  The FFL received the denial on September 5, 2018.  (R. 30: PSR, ¶ 11, PageID 207).

That same day, Defendant again attempted to purchase a firearm from another FFL in Painesville, Ohio.  Defendant again provided false information on the ATF Form 4473 when he said that he had never been convicted of a misdemeanor crime of domestic violence.  Like his

4

first attempt to purchase a firearm, Defendant failed the NICS background check prior to the transfer of the firearm. (*Id.* ¶ 12).

Undeterred, on October 27, 2018, Defendant attempted to purchase a firearm for a third time from another FFL in Bedford Heights, Ohio. Once again, Defendant completed the ATF Form 4473, and again, provided false information when he answered that he had never been convicted of a misdemeanor crime of domestic violence and that he was not subject to a court order restraining him from harassing, stalking, or threatening an intimate partner. Like the first two attempts, Williams again failed the NICS background check. (*Id.* ¶ 14).

### C. After Three Denials from FFLs, Williams Purchases a Firearm Through an Online Marketplace.

Nevertheless, Defendant ultimately purchased a firearm via Armslist.com, an online firearms marketplace that connects private sellers and buyers. On November 3, 2018, after responding to an advertisement of a firearm for sale on Armslist.com, Defendant purchased a Walther P22, 9 millimeter, semi-automatic pistol from a private individual. Unlike purchasing from an FFL, Defendant did not complete an ATF Form 4473 and did not have an NICS background check. Rather, Defendant responded to a posting by a private seller for an available firearm and coordinated a meeting in a nearby parking lot to transfer the firearm the following day. (Ex. 5: Armslist Email Exchange).

### D. Williams Twice Violates his Protection Order by Contacting the Victim.

On November 18, 2018, in connection with the protection order against Defendant, the Cleveland Police Department ("CPD") responded to the victim's home. She told officers that Defendant was stalking her. Specifically, she told officers that Defendant had been repeatedly driving past her home—she saw him three times over roughly an hour and a half. She explained that she recognized the loud music that Defendant was playing from the car and saw Defendant

with his head sticking out of the car window, trying to get her attention.  As a result, Defendant has been charged with violation of a protection order in Case Number 2018-CRB-020913, in Cleveland Municipal Court.  On November 20, 2018, a complaint was filed with an arrest warrant.  (R. 30: PSR ¶ 48, PageID 213-14).

On December 29, 2018, the victim contacted CPD to report that Defendant again violated the protection order.  She told officers that she received a FaceTime call from an unknown number but did not answer.  She asked via text who it was and received a voice message that said, "I love you."  In an attempt to determine whether Defendant was calling her, she returned the call and a man answered, saying, "wrong number baby."  After these exchanges, she received calls from Defendant's cell phone number.  During these calls, the victim recognized Defendant's voice and cell phone number.  (*Id.* ¶ 49, PageID 214).

### E. Defendant Pleads Guilty to Three Counts of Making a False Statement During the Purchase of a Firearm and Possession of a Firearm by a Prohibited Person.

On February 6, 2019, a federal grand jury returned a four-count superseding indictment, which included three counts of false statements during the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6), and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(8).  (R. 16: Superseding Indictment, PageID 113-18).

On June 6, 2019, Defendant pled guilty to the superseding indictment without a plea agreement.  (R. 30: PSR ¶ 5, PageID 206).  Defendant's base offense level is 14, *see* U.S.S.G. § 2K2.1(a)(6) and (R. 30: PSR ¶ 24, PageID 209), and because the offense involved three or more firearms, his offense level increases by two, § 2K2.1(b)(1)(A) and (R. 30: PSR ¶ 24), for an adjusted offense level of 16.  (*Id.* ¶ 28, PageID 210).  If the Court grants a three-level reduction for acceptance of responsibility, Defendant's resulting offense level is 13.  (*Id.*, ¶ 32).

Defendant's objection to the two-level increase for the number of firearms is meritless. The PSR properly applied a two-level increase for the amount of firearms involved under § 2K2.1(b)(1). The Guidelines' commentary specifically instructs the Court to count "only those firearms that were unlawfully *sought to be obtained*, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or *attempted to obtain* by making a false statement to a licensed dealer." U.S.S.G. § 2K2.1, comment. (n.5) (emphasis added).

Relatedly, courts have applied an increase under § 2K2.1(b)(1) for unsuccessful attempts to unlawfully obtain a firearm. *See United States v. Maturino*, 887 F.3d 716, 721 (5th Cir. 2018) (affirming enhancement under § 2K2.1(b)(1) where the defendant *sought to obtain* 144 grenades, but 143 were actually inert) (emphasis added); *United States v. Henry*, Case No. 06-33-02, 2012 WL 5881848, at *2, *4 (E.D. Pa. Nov. 21, 2012) (applying enhancement under § 2K2.1(b)(1) where there was evidence that the case involved multiple attempts, both successful and unsuccessful, to acquire firearms through straw purchasers). Additionally, the Seventh Circuit affirmed the enhancement for three or more firearms under § 2K2.1(b)(1)(A) when a defendant was arrested with one firearm, sold a firearm to a cooperating individual through a co-defendant, and promised to sell two additional handguns to the cooperating individual. *United States v. Birk*, 453 F.3d 893, 897 (7th Cir. 2006). It noted that, although two of those firearms were not yet in the defendant's possession, there was ample evidence that the defendant was on the phone bartering with the cooperating individual to sell the firearms. *Id.* at 900. Therefore, it affirmed the two-level enhancement based upon finding that the offense and relevant conduct involved three or more firearms. *Id.*

Defendant's argument that he made multiple attempts to purchase one firearm directly contradicts the Guidelines' language, which counts any *attempt to obtain* a firearm by making a

7

false statement to a licensed dealer. *See* U.S.S.G. § 2K2.1, comment. (n.5). Moreover, each false-statement count does not reflect Defendant's attempt to purchase the same firearm from the same FFL. Rather, each count reflects a separate attempt—from another FFL, on a new day—to purchase a different firearm. Therefore, the total number of firearms involved in the offense is four.

Similarly, Defendant's reliance on *Birk* is misplaced. Indeed, *Birk* supports the application of the enhancement here. In *Birk*, the Seventh Circuit affirmed the enhancement where the defendant offered to sell two firearms that he did not actually possess. Like three of the firearms involved in this case, the district court properly counted all of the firearms that the defendant sought to distribute, even though he did not actually possess or distribute two of them. Here, Defendant attempted to obtain three different firearms by making false statements to FFLs. Therefore, each attempted firearm purchase counts for the enhancement, regardless of whether Defendant ultimately obtained the firearm. Because Defendant thrice attempted to obtain a firearm by making a false statement to an FFL and ultimately purchased a firearm via Armslist.com, the PSR properly counted the number of firearms as four and applied a two-level enhancement under § 2K2.1(b)(1). Therefore, his adjusted offense level is 16 before an acceptance-of-responsibility reduction.

Defendant has two criminal history points: one for the assault against his child's mother and one for obstructing official business. (*Id.* ¶¶ 34, 37, PageID 210-11). Thus, Defendant's resulting Guidelines range is 15 to 21 months. (*Id.* ¶ 68, PageID 217). This sentence, however, does not adequately account for the danger Defendant posed by attempting to and ultimately purchasing a firearm given his prior assault conviction and protection order. Therefore, the United States requests that the Court vary upward to a sentence of 60 months.

## II. An Upward Variance of 60 Months is Sufficient But Not Greater Than Necessary to Account for the § 3553(a) Factors.

Defendant's possession of a firearm poses a significant danger. The Supreme Court agrees that "[f]irearms and domestic violence are a potentially deadly combination nationwide." *United States v. Hayes*, 129 S. Ct. 1079, 1087 (2009). It has further noted that, "[t]his country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic violence each year." *United States v. Castleman*, 572 U.S. 157, 160 (2014) (citing *Georgia v. Randolph*, 547 U.S. 103, 117-18 (2006)). "Domestic violence often escalates in severity over time[,] and the presence of a firearm increases the likelihood that it will escalate to homicide[.]" *Castleman*, 572 U.S. at 160 (internal citations omitted). All too often, "'the only difference between a battered woman and a dead woman is the presence of a gun.'" *Id.* (quoting 142 Cong. Rec. 22986 (1996) (statement of Sen. Wellstone)).

"'The dangerousness of guns and their adaptability to use in violent crime is why Congress has prohibited their possession' by individuals subject to a domestic protection order or convicted of a misdemeanor crime of domestic violence." *United States v. Rogers*, 371 F.3d 1225, 1229 (10th Cir. 2004) (quoting *United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000)). "[T]he prohibitions set out in § 922(g)(8) . . . seek to protect society in general, and the intimate partners of persons with a background of domestic violence in particular, by reducing the risk of violence that may result from the possession of guns by persons with a proven propensity for violence." *Id.* "[P]ossession of guns in violation of § 922(g)(8) and (9) increases the risk that individuals subject to a domestic protection order or convicted of a misdemeanor crime of domestic violence may engage in violent acts." *Id.* "[P]eople who have been convicted of violence once—toward a spouse, child, or domestic partner, no less—are likely to use violence again." *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (*en banc*). "[A]nyone who

9

attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk, and should be prohibited from possessing firearms." 142 Cong. Rec. S11, 877 (daily ed. Sept. 30, 1996); *see also* 142 Cong. Rec. S10, 377-80, S11, 226-27, and S11, 876-78 (daily ed. Sept. 12, 25, and 30, 1996).

Here, Defendant has a demonstrated pattern of physically assaulting women. Notably, the victim's account of his physical abuse in 2011 is very similar to the victim's account of his physical abuse in her application for a protective order in 2018. Specifically, both victims stated that Defendant grabbed their necks or choked them, slapped them in the face, and prevented them from using their phone to call the police by either breaking the phone or changing the passcode. This behavior demonstrates the serious danger that Defendant presents and his unlawful possession of a firearm increases the risk that he will engage in a violent act. Given Defendant's pattern of violence against women, an upward variance is appropriate.

Likewise, the nature and circumstances of this offense are particularly egregious. Defendant attempted to purchase a firearm three times from three different FFLs during the span of less than two months. But the third time was not the charm. These three denials, however, did not deter Defendant—he was determined to purchase a firearm. Instead of continuing to go to FFLs, where was required to complete the ATF Form 4473 and pass an NICS background check, Defendant went to an online marketplace, Armslist.com. Just days after his third denial, he responded to an advertisement from a private, individual seller, coordinated a meeting time and place, and one day later, purchased a firearm—without a background check.

To fully appreciate the seriousness of Defendant's conduct, it is important to consider his actions in context. Defendant first tried to purchase a firearm on August 31, 2018, just days after he repeatedly assaulted his intimate partner. He ultimately purchased a firearm on November 3,

10

2018, from an individual seller who posted an advertisement on Armslist.com—while he had an active protection order against him prohibiting him from possessing or purchasing a firearm. Roughly two weeks after purchasing the firearm, he violated the protection order by repeatedly driving past the victim's home and playing loud music to get her attention. Approximately one month later, on December 29, 2018, he again violated his protection order by calling the victim.[2] Importantly, Defendant began to violate the no-contact provision of the protection order only *after* obtaining a firearm—a potentially deadly combination. *See Hayes*, 129 S. Ct. at 1087. Thus, an upward variance is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Defendant has repeatedly demonstrated that he lacks respect for the law. Defendant's argument that he was confused about the charges and thought he had clearance to carry a firearm is unavailing, particularly given Defendant's repeated attempts to purchase a firearm *after* failing the NICS background check and *after* a court entered a protection order. The protection order clearly prohibits Defendant from possessing, using, carrying, or obtain any deadly weapon while the order is in effect. (Ex. 3: Protection Order, 3). Yet Defendant still attempted to purchase a firearm from an FFL *after* the court granted the protected order. Moreover, he falsely stated that he was not subject to a protection order on the ATF Form 4473. And he did not stop when he failed the NICS background check for a third time. He went online and secured a firearm from a private individual—in direct violation of the protection order. This does not mitigate Defendant's conduct. Rather, it shows his deliberate defiance of the law and court orders. It also reveals Defendant's willingness to obtain a firearm by any means necessary and confirms the

---

[2] Magistrate Judge Baughman detained Defendant in this case shortly thereafter, on January 4, 2019.

11

danger he poses to society. Similarly, his repeat contact with the victim, in violation of the protection order, further shows his dangerousness and lack of respect for the law. Defendant has not been deterred from obtaining a firearm and contacting the victim, despite a protection order prohibiting him from both. Therefore, a significant sentence that accounts for his repeated violence and defiance of the law is necessary. The United States submits that an upward variance to 60 months is sufficient but not greater than necessary to account for these § 3553(a) factors.

Courts have affirmed upward variances in similar cases. For example, in *United States v. Howard*, 743 F. App'x 526 (4th Cir. 2018), the Fourth Circuit affirmed a 75-month upward variance where the defendant pled guilty to possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and (924)(a)(2). *Id.* at 528. The defendant's advisory Guidelines range was 15 to 21 months, the same as Defendant's range in this case. *Id.* at 527. In reaching the decision to vary upward, the court relied on several incidents detailed in the presentence report and testimony offered at sentencing that established the defendant's pattern of violent behavior towards others. The court also noted that it varied upward to protect the public from the defendant's criminal conduct. *Id.* Although this was a "significant upward variance sentence of 96 months[,]" the Fourth Circuit noted that the district court stated that it considered each § 3553(a) factor and provided a lengthy explanation in which it displayed substantial concern for the defendant's history of violent conduct. *Id.*

Similarly, the Eighth Circuit affirmed a 15-month upward variance to the statutory maximum of 120 months in a § 922(g)(9) case. *United States v. Barrett*, 552 F.3d 724, 726 (8th Cir. 2009). The district court properly calculated the defendant's Guidelines range as 84 to 105

months, and then considered the § 3553(a) factors to vary upward to the statutory maximum based on the defendant's history of assault against multiple victims, drug use, and likelihood of committing another violent offense. *Id.* at 727. The Eighth Circuit affirmed, noting that a court may consider a defendant's criminal history even if that history is included in the defendant's criminal history category. *Id.*

The Sixth Circuit has likewise affirmed similar upward variances in § 922(g) cases. *See, e.g., United States v. Tate*, 516 F.3d 459, 471 (6th Cir. 2008) (affirming statutory maximum sentence of 120 months for violating § 922(g), an upward variance from a Guidelines range of 84-105 months, based on the defendant's criminal history, where there was a "pattern that include[d] physical violence, attempt to avoid arrest, situations that risk[ed] the lives of individuals, . . . [and] a general lack of respect for the law."); *United States v. Horton*, 638 F. App'x 469, 471 (6th Cir. 2016) (affirming 13-month variance given the defendant's history of similar offenses and the need to deter such conduct in the future).

Recently, the Sixth Circuit affirmed a 14-month upward variance to the statutory maximum sentence in a case where the defendant pled guilty to possessing a firearm with an obliterated serial number. *United States v. Johnson*, No. 18-3720, 2019 WL 3788232, at *1-2 (6th Cir. Aug. 13, 2019). It noted that the district court "imposed a strict but reasonable sentence." *Id.* at *2. The defendant had repeatedly violated gun-possession laws, showed no signs of changing his ways, obtained the firearm shortly after being released for his last conviction, and had a lengthy arrest history. The district court found that a 60-month sentence—the statutory maximum—was necessary to punish the defendant, to deter him from continuing down this perilous path, and to protect the public. The Sixth Circuit affirmed the upward variance to the statutory maximum, seeing "no basis for reweighing those factors." *Id.*

Here, like in *Howard*, Defendant has a pattern of violence, specifically towards intimate partners. Defendant has choked, pushed, slapped, threatened, and prevented two women from immediately calling the police for help. This violence is documented in 2011 and again in 2018—showing that Defendant continues to engage in violent behavior against intimate partners. Defendant's possession of a firearm exacerbates the risk for violence. Given Defendant's two violations of the protection order after purchasing the firearm—including repeatedly driving by her home to get her attention—his possession of the firearm is even more serious and poses a significant risk of violence. Similarly, like in *Tate*, Defendant has a pattern of physical violence and situations that risk the lives of individuals, and has demonstrated a general lack of respect for the law. Further, like in *Horton*, Defendant's history of domestic violence demonstrates a strong need to deter such conduct in the future. Therefore, an upward variance is appropriate.

Moreover, like in *Johnson*, a strict but reasonable sentence is necessary. Like the defendant in *Johnson*, Defendant has shown no sign of changing his ways. Seven years after his assault conviction in 2011, Defendant has continued to engage in domestic violence against an intimate partner. Moreover, there was a short period of time in between his attempt to purchase a firearm and ultimate purchase of a firearm after the court entered the protection order, and he repeatedly violated the terms of the protection order. A significant sentence is necessary to adequately punish Defendant, to deter him from continuing down this perilous path, and to protect the public. Further, the requested variance is 60 months less than the statutory maximum under § 922(g)(8).

Defendant's argument that he only obtained the firearm to work as a security guard is unavailing. Defendant cannot lawfully possess a firearm given his prior conviction, which

14

qualifies as a misdemeanor crime of domestic violence,[3] and his active protection order. *See* 18 U.S.C. §§ 922(g)(8) and (9). This prohibition does not change based on Defendant's occupation as a security guard. Although Defendant erroneously passed a records check—not a full NICS background check—to secure employment as a security guard, this does not excuse his repeated attempts to obtain a firearm after failing NICS background checks. Nor does it give him lawful authority to possess a firearm.

Although he asserts that he "had no malicious intent[,]" (R. 32: Sentencing Mem., PageID 232), his actions tell a different story. He purchased a firearm in direct violation of his protection order, and then continued to violate the protection order by contacting the victim. Further, Defendant's continued minimization of his offenses, *see* (*id.*, PageID 230-32, PageID 236), is concerning. Although he claims that he fully admits responsibility, in his sentencing memorandum, he simply acknowledges that he "should have read the ATF form more carefully." (*Id.*, PageID 231). But each time Defendant completed that form and checked the box "no," he made a deliberate, false statement in an attempt to purchase a firearm that he knew he could not lawfully possess. In his sentencing memorandum, he also fails to address his unlawful purchase of a firearm on Armslist.com outside of his confession to law enforcement. *See* (*id.*, PageID 231, 233) (explaining that Defendant "now understands that he should have read the ATF form more carefully and accepts full responsibility for not answering the questions correctly" and "he

---

[3] The term "misdemeanor crime of domestic violence" means an offense that is a misdemeanor under Federal, State, or trial law and has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim. 18 U.S.C. § 921(33)(A).

accepts full responsibility for not answering the questions on the ATF form accurately"). Thus, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to future criminal conduct, and to protect the public from Defendant's future crimes, an upward variance to 60 months is sufficient but not greater than necessary.

### III. Conclusion

For these reasons, and for those to be articulated at the sentencing hearing, the United States respectfully requests that the Court impose a sentence of 60 months in prison.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

        /s/ Danielle K. Angeli
        Danielle K. Angeli (MI: P81362)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3875
        (216) 522-8355 (facsimile)
        Danielle.Angeli@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September 2019 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Danielle K. Angeli
Danielle K. Angeli
Assistant U.S. Attorney